All right. All right, counsel, please proceed. Thank you, Your Honors. Opposing counsel, may it please the Court. This case has to do with the claimant's testimony regarding the frequency of his headaches. At his hearing, an appellant testified that surgery had resolved seizures and passing out from his Arnold Tiare malformation. That surgery was in 2015. Before he filed this case, he testified that his headaches returned within a few months. For what it's worth, we acknowledge that the record doesn't show him discussing those headaches with his doctors until about May of 2016, which was over a year after that surgery, but before the filing date of this case, which is Title 16 only. What's the implication of that, the fact that he didn't discuss his headaches with his doctors? I'm honestly not sure why he didn't discuss his headaches with his doctors in the year following the surgery, but because this is a Title 16 case, the only relevant time period is from the filing date forward, and during that time period he had been getting treatment for recurring headaches. Okay. And so am I correct in saying that you concede that Listing 11.02 does not apply? I thought I saw that in your reply brief. I mentioned it in the reply brief because this case was decided by the ALJ before that SSR directing headaches toward Listing 11.02 was in effect. That SSR, I think, came into effect while the case was at the Appeals Council, but since all they did was leave the ALJ's decision alone, I don't think it applies at this stage in the proceedings. I think it would apply if the cases were mandated. Okay. So the issue then is even without SSR 19-4, the frequency of headaches is still relevant. Mr. Ferguson indicated that he was having two or three headaches a week, each lasting one to two days, which would indicate a range of anywhere from two to six headache days per week. Counsel, could you help me out here? We know what the etiology was of his headaches prior to surgery, which was the spinal compression. Right. That was alleviated by the surgery. There was a period of time when he didn't have headaches. What is the etiology of the headaches now? Is there any indication? There doesn't appear to be any clear indication of why the headaches are recurring. There are still these white matter issues, small ischemic changes of the cerebral white matter after surgery. They were similar to what was there before surgery, so it would appear that surgery did not resolve those. Beyond that, I could only speculate. Because I was reading Judge McShane's opinion, and it seems that he's got a pretty good point there with saying that the conservative treatment of the headaches, with Advil or Tylenol, was handling it. Respectfully, I disagree, Your Honor. He tried medication medications, sorry, migraine medications and pain medications. In March 2017, he reported that those were ineffective, and doctors recommended a trial of amitriptyline. He returned to the doctors in September of 2017, reporting ongoing what he described as more pressure than pain. And in May of 2018, shortly before the hearing, they recommended him for acupuncture. So it does appear that over-the-counter medications and conservative treatment were not doing it. Conservative treatment can be a basis for denying disability, correct? If conservative treatment is effective, yes, I believe it can. Here, I don't believe that conservative treatment was effective. Doctors were trying progressively more invasive options. So the main thing the judge relied on in his decision was a lack of objective findings. That's problematic because there's no objective test for a headache. A headache doesn't necessarily cause a diminishing sensoria or reduced strength. I mean, I'm bold to assume everyone here at some point in their lives has had a headache. It doesn't mean you can't walk or can't see. Nonetheless, it makes it very difficult to persist in tasks. Well, there's a difference between having a headache and having a headache that is disabling. And that's the issue we're here whether or not there was sufficient evidence in the record that these headaches were disabling post-surgery. Right. That's a fair point, Your Honor. And certainly one headache would not constitute a disability. But a person who has a serious headache might just call in sick to work that day. But a person who's having headaches two to six days a week on a regular basis can't just call in sick to work all of those days. They couldn't maintain a job. So we believe the issue is how much time Mr. Ferguson would miss as a result of these headaches. And the judge's discussion doesn't approach any reason to reject his testimony as to the frequency of his headaches. Counsel, are you familiar with our case of Britton v. Colvin that was cited by the commissioner for the proposition that the ALJ was not required to include migraines in the hypothetical post to the vocational expert because there was no independent medical evidence establishing that the claimant suffered from migraines? I can't say that I'm familiar with that case, but I think there is some independent evidence here that the claimant suffered from headaches. He's been seeking treatment on a regular basis from the protective filing date all the way through the date of decision. The doctors prescribed him medication. Certainly his own treatment providers believed him that he was having headaches. They wouldn't prescribe medication if they didn't. Understood, but generally we will have something from a doctor saying that the severity of the headaches renders him incapable of working so many hours a day. We don't have that in this record. We don't have that in this record, no. What we have is his testimony that because of his headaches he would miss time. If he was having headaches anywhere from two to six days out of the week, wouldn't this work too much to persist in work? If there's no more questions right now, I'd like to save time for rebuttal. Thank you, Your Honors. May it please the Court, Daniel Talbert on behalf of the Acting Commissioner of Social Security, Kilolo Kichikazi. The Administrative Law Judge reasonably found the claimant, Danny Ferguson, not disabled under the Social Security Act. This Court should affirm that finding. Mr. Ferguson alleged disability based on a variety of neurological symptoms including numbness, tingling, headaches or pressure in his head, balance and memory problems. But the ALJ correctly found that after the 2015 decompression surgery, those symptoms resolved. And although Ferguson reported the return or the emergence or the recurrence of symptoms in subsequent years, the ALJ reasonably pointed to objective evidence that called those allegations into question. Is it your position that Mr. Ferguson was found to be malingering or there was adverse credibility finding against him? Your Honor, he was not found to be malingering. But the ALJ did reject his testimony about symptoms and that would be what was previously called credibility. We don't use that term anymore in the Social Security context, but it's essentially the same equivalent of rejecting symptom testimony. Where does he reject the symptom testimony? Would you point out to me where in the ALJ's decision he rejects symptom testimony? Yes, Your Honor. On page 18 of the Certified Administrative Record, the ALJ summarizes the claimant's allegations. And on the bottom of that page, the ALJ says, The claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence for the reasons explained in this decision. What medical evidence was there? What objective medical evidence was there that he didn't have headaches? So the evidence that the ALJ points to here is that first of all, the claimant had the Chiari malformation, which caused the pressure and that was the cause of these symptoms to begin with. The claimant had the surgery that essentially resolved it and was successful. The ALJ then points to medical evidence, including some imaging, MRIs and CT scans that were subsequent to that, that were negative or didn't show any new abnormalities or problems. And he also pointed to neurological examinations. I think most relevant to the headaches or the pressure is, and this is in the kind of middle bottom of page 19, the ALJ notes, He remained neurologically intact with no clinical sign to suggest increased intracranial pressure. And ALJ gives a citation to the record there. So the ALJ is pointing to evidence. I take your point that the ALJ pointed to medical evidence, objective medical evidence showing that the skull compression situation was not causing the headaches, but he didn't point out to any other reason why there were headaches or any reason why there were not headaches, right? Well, your honor, I think that's a fair point interpretation of the record. The response I would make to that is that the claimant has the burden to demonstrate disability, to present evidence that proves disability. And in fact, that would substantiate the severity of frequency, the extent of the symptoms that they're alleging are disabling them. And in this case, the ALJ looks at this record and when we look at this record, we do see the claimant had this successful surgery. After the surgery, he goes a fairly long period of time without reporting any of these problems. He reports the headaches or the pressure on a couple of occasions, but they're fairly infrequent. He's going three to six months without seeing anyone and complaining about it. And I'd point out that, and this is something that goes specifically to some of the ALJ's findings, when the claimant does go in for treatment and needs treatment for this pressure, it's on multiple occasions it is associated with some sort of exertion that he did the previous day. Shoveling snow one time, there's another time you mentioned, I think, heavy physical labor. And the ALJ, therefore, considered those kind of precipitating or aggravating factors, which is another one of our factors in the commissioner's regulations. And for that reason, the ALJ said, well, I'm going to restrict him to just this low range of sedentary work. And I refer to page 21 of the certified administrative record, the last sentence before finding five in the middle there, where he says, in finding restrictions to sedentary exertion with only simple routine tasks, I have also accounted for the claimant's reports of worsening headaches with physical work labor. And then he cites those visits where the claimant said, well, you know, my headache came up because of this. I think one of the times he said, I started having the pain a couple of days ago, and then it got worse when I went out to shovel snow. So the ALJ, by limiting the claimant to the sedentary work with certain other headache precautions, has accommodated that. And in so doing, I would point out also that the ALJ's finding was supported by the fairly unanimous medical opinion or medical source consensus from the state agency medical consultants who looked at the record and said, yes, you know, there were two doctors looking at the physical side of it saying, yes, he could perform the sedentary range of work as long as he's not exposed to bright lights and certain other things. And the two doctors looking from the mental perspective said he could do simple work. Because of the headaches or the head pressure, we should limit some of his interactions and other things. So the ALJ's findings were all entirely reasonable on this record. They're supported by substantial evidence. And this court should affirm the ALJ's findings and decision. And if there are no further questions, I'll simply rest on the briefs. Thank you, counsel. Rebuttal? Thank you, Your Honors. What remedy do you seek? We're just seeking remand, Your Honor. For what? I'm sorry? For what? For further consideration of the claimant's testimony, specifically to address his allegation of the frequency and duration of his headaches. And so what would the ALJ say that wasn't already said in the opinion? Well, I assume that the ALJ would give either a reason why he does not believe that the claimant is having one to two headaches or, I'm sorry, two to three headaches a week lasting one to two days, or the judge might reverse himself and actually agree with that testimony. But opposing counsel has represented that those symptoms that were supported in the record were accommodated in the RFC. What's your response to that? My response to that is, as Your Honor pointed out, the judge did not find that Mr. Ferguson was malingering, and as such he is obligated to specifically address what parts of the claimant's testimony were inconsistent with the record. And there's nothing directly addressing the frequency and intensity of these headaches. At no point does the ALJ explain why these limitations would alleviate that frequency. Well, I think the ALJ did acknowledge the plaintiff's testimony regarding the frequency of the headaches. With respect, Your Honor, I don't know where in the decision there was any discussion of the frequency. There was discussion of minimizing exertion. Page 18, it says the claimant testified that headaches happened two to three times a week, and during which he does not leave his room. He said headaches can last a day or two and happen without a trigger. Yes, that was recitation of what the claimant said. But at no point did the judge explain why that was not credible. I would like to note opposing counsel pointed to evidence of malingering. Yes, I think the government said he didn't find him not credible. He said that that was accommodated in the residual functional capacity determinations. But there was no discussion as to the judge's finding was that the claimant's testimony was not entirely consistent, but didn't explain any inconsistency with respect to this frequency issue. I don't feel respectfully that the ALJ's discussion explains away the frequency and duration of these headaches. It just says, well, if you do this, then the headaches maybe be less. What, in your view, would have to have been different in the RFC? In my view, there might be an indication of how often the claimant would miswork as a result of headaches, which might happen without a trigger. But was there anything in the record talking about how often the claimant would miswork? Oftentimes we do have in the expert medical reports some indication that the client would have to miswork so many days or wouldn't be able to work a full day or something to that effect. But is there anything in the medical records here that approaches that type of specificity? In the medical records, there is nothing approaching that level of specificity, no. What we have is the claimant's testimony, and if the judge had offered that as a reason to reject the testimony, we might not be here, but the judge wouldn't do that. Did the claimant say he would have to miswork? Did the claimant testify that if he had a job, he would have to miswork? Well, he testified that during his headaches, he would have to stay in his room, unless he worked from his room, which really wasn't an option for anybody at this time frame. I guess that's more common now, post-COVID. All right. Thank you, counsel. You've exceeded your time. Thank you, Your Honor. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: RAWLINSON, BEA, SUNG